# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SMARTENERGY HOLDINGS, LLC d/b/a SMARTENERGY,<br><br>*Plaintiff*,<br><br>v.<br><br>FREDERICK H. HOOVER, in his official capacity as Chair of the Maryland Public Service Commission, *et al.*,<br><br>*Defendants* | Case No. 24-cv-2336-ABA |

## MEMORANDUM OPINION

SmartEnergy Holdings, LLC ("SmartEnergy"), which operated in Maryland for a number of years beginning in 2017, was the subject of an enforcement action before the Maryland Public Service Commission ("PSC" or "Commission") under the Electric Customer Choice and Competition Act of 1999, the Maryland Telephone Solicitations Act ("MTSA"), and regulations promulgated by the PSC. It challenged various PSC orders in the Maryland courts, and in February 2024, the Supreme Court of Maryland affirmed the findings that SmartEnergy had violated those consumer protection laws, and affirmed the remedies that had been imposed, including an order requiring SmartEnergy to disgorge a portion of its revenues to fund partial refunds for affected customers. *In the Matter of Smart Energy Holdings, LLC*, 486 Md. 502 (2024). SmartEnergy filed this case in August 2024 against the commissioners of the PSC in their official capacities ("Defendants"), contending that (1) the monetary relief that the PSC awarded violated the Eighth Amendment of the U.S. Constitution and (2) SmartEnergy should have been granted a jury trial during the course of the

1

administrative and/or state court proceedings. Defendants filed a motion to dismiss, which this Court granted. ECF No. 21.

SmartEnergy has appealed that dismissal order, and the appeal is pending. In the meantime, SmartEnergy has filed a motion in this Court arguing that this Court should reverse its dismissal order for two reasons. First, SmartEnergy has been unable to find accurate addresses for many of the customers who are the intended beneficiaries of the PSC's partial refund order. SmartEnergy contends this development bolsters its Eighth Amendment claim, rendering dismissal unwarranted. The fact that a substantial portion of the customers who the PSC found were harmed will not receive any refund, SmartEnergy contends, confirms that the refund order is an unconstitutional fine. ECF No. 26-1 at 8. Second, SmartEnergy contends that it should be permitted to assert a new claim, this one under the Due Process Clause of the Fourteenth Amendment. SmartEnergy requests an opportunity to amend its complaint to add a claim that the PSC violated due process by failing to provide SmartEnergy "fair notice . . . how to accord its conduct to avoid the massive and adverse legal consequences levied by the Commission." ECF No. 26-3 ¶ 115 (proposed amended complaint).

Because this Court lacks jurisdiction to reverse its prior ruling given the pendency of the appeal, SmartEnergy's request is that this Court issue an "indicative" ruling as permitted by Federal Rule of Civil Procedure 62.1(a). "If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending," a district court may, among other options, "state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Civ. P. 62.1(a)(3). For the following reasons, the Court concludes that the obstacles to distributing rebates to customers would not

change this Court's Eighth Amendment analysis, and the new due process claim is barred as a matter of claim preclusion.

## I. The unclaimed check issue

As this Court explained in dismissing SmartEnergy's complaint, the Eighth Amendment, in addition to prohibiting cruel and unusual punishment, prohibits "excessive fines." U.S. Const. amend. VIII. When the government has imposed a monetary obligation in a civil (non-criminal) context, a party who contends that the obligation constitutes an unconstitutional fine must establish that (1) it was imposed "in part to punish," *Austin v. United States*, 509 U.S. 602, 610 (1993), as opposed to for solely "remedial purposes," *Korangy v. FDA*, 498 F.3d 272, 277 (4th Cir. 2007), and (2) the monetary penalty is "'grossly disproportional to the gravity of the offense,'" *id.* at 277 (quoting *United States v. Bajakajian*, 524 U.D. 321, 334 (1998)). *See Browning-Ferris Indust. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989). In granting Defendants' motion to dismiss, this Court concluded that SmartEnergy had not pled facts that would satisfy either element. ECF No. 21 at 20–27.

As noted above, SmartEnergy reports that in the course of administering the disbursement of the partial refunds pursuant to the PSC's remedial order, the PSC has been unable to find current addresses for a substantial number of the affected customers, and other customers simply have not cashed the checks that were sent to them. These issues affect a substantial portion of the funds at issue: "As of October 17, 2025, fewer than one third of the checks mailed to customers have been cashed." ECF No. 26-1 at 3; *see also* ECF No. 26-4 ¶¶ 4–5 (declaration of SmartEnergy's chief operating officer). The PSC was planning to disburse the refunds pro rata, with a proportionate share going to each of the affected customers. The logistical hurdle

presented by the undeliverable payments has required the PSC to decide what to do with the funds that SmartEnergy has disgorged but for which the pro rata checks sent to the pertinent customers were returned undeliverable.

At least according to the aspects of the PSC record that the parties have brought to this Court's attention, there are two options for handling the uncashed checks. The first option is one that SmartEnergy itself originally proposed: to transfer undistributed funds to the Fuel Fund of Maryland, an energy assistance group that serves households in some but not all jurisdictions in Maryland. SmartEnergy's proposal, in August 2025, was that "recogniz[ing] that not all refund checks will be cashed, and some checks will be returned to sender," any "unclaimed refunds would be paid to the Maryland Fuel Fund if not cashed within 180 days of mailing the checks." ECF No. 29-2 at 11–12. That proposal did not concede the propriety of the PSC's refund order, but rather stated SmartEnergy's position for what should happen with refunds that were not claimed by customers. This approach would be akin to a *cy pres* distribution that is used in some class action settlements. *See, e.g.*, *In re Microsoft Corp. Antitrust Litigation,* 185 F. Supp. 2d 519, 523 (D. Md. 2002). The second option is for "the unclaimed portion of the refunds to be re-allocated to those customers who do cash their refund checks." ECF No. 29 at 29. This is an approach that also is sometimes used in class action settlements where, for example, the parties are unable to agree on a *cy pres* mechanism or recipient or a court is skeptical that *cy pres* distribution is appropriate in the context of a particular case. *See Cy pres—Generally*, 4 Newberg and Rubenstein on Class Actions § 12:32 (6th ed.).

SmartEnergy contends that the sizeable share of the affected customers whose checks have not been cashed, which SmartEnergy describes as a "newly discovered fact,"

means that "roughly $3.5 million of a minimum $6.5 million refund order—the substantial majority—will not go to customers as refunds." ECF No. 30 at 14. This development, SmartEnergy contends, means that the entirety of the $6.5 million refund order constitutes a "fine" for Eighth Amendment purposes because it is "a fixed financial penalty that SmartEnergy must pay, regardless of whether the funds actually remediate any specific purported harm to any SmartEnergy customers." ECF No. 26-1 at 8.

The Court is not persuaded that the unavailability of updated addresses for a substantial number of customers, or the fact that some customers have received checks but did not cash them, affects the Eighth Amendment analysis, for four reasons.

First, this argument at most pertains to the first prong of the Excessive Fines Clause analysis: whether to categorize the refund order as entirely "remedial" or in part as punishment. But the Court did not just conclude that the rebate order does not constitute a "fine" subject to the Eighth Amendment, ECF No. 21 at 20–23, but also that even if the rebate order were considered a "fine," SmartEnergy does not allege facts that would render a $6.5 million refund order (plus the $250,000 civil penalty) "grossly disproportional to the gravity of the offense," *Korangy*, 498 F.3d at 277; *see* ECF No. 21 at 23–25, particularly in light of the factual findings established in the administrative proceedings and upheld through all three levels of the Maryland courts. SmartEnergy's Rule 62.1 motion does not point to any considerations that would affect this second prong of the analysis.

Second, although the dispute arising from the uncashed checks affects how the $6.5 million refund order is distributed—specifically, whether unclaimed funds will be re-allocated to customers who did receive checks or instead will be distributed to the Fuel Fund—the dispute does not affect the total amount of the refund order, which

5

remains the same as when the Court dismissed SmartEnergy's claim. The focus of both prongs of the Excessive Fines Clause analysis is on the total monetary obligation; SmartEnergy does not identify any case or other authority supporting the contention that sending unclaimed checks to a community energy assistance fund bears on either prong of the analysis.

Third, as this Court explained, the $6.5 million refund order was significantly less than the statutorily authorized maximum penalties that the PSC could have levied. *See* ECF No. 21 at 25. It is also significantly less than the total amounts that SmartEnergy collected as revenue from its Maryland customers during the relevant period.[1] That means, as Defendants put it and SmartEnergy does not dispute, "if the unclaimed portion of the $6.5 million refund amount was to be redirected to customers who had cashed their refund checks, those customers could be brought *closer* to being made whole, with little if any unclaimed portion remaining." ECF No. 29 at 29. The upshot would be that some customers would receive a somewhat higher-than-pro-rata share and others (those whose current addresses cannot be found or who failed to cash their checks) would receive nothing. It defies logic, in addition to the principles underlying cases such as *Browning-Ferris* and *Korangy*, to suggest that a partial refund that is unequally allocated for logistical reasons converts the refund to a "punishment" that is

---

[1] In its complaint, SmartEnergy explained that having identified "every bill it had sent to a Maryland customer" and "the customer's usage for that billing cycle," it determined that "the difference between the rate charged by SmartEnergy and the one charged by a utility" was "approximately $15.7 million." ECF No. 1 ¶ 71. Thus, SmartEnergy's total revenue from Maryland customers during the relevant period necessarily exceeded $15.7 million.

"'grossly disproportional to the gravity of the offense." *Korangy*, 498 F.3d at 277 (quoting *Bajakajian*, 524 U.S. at 334).

Fourth, as noted above, SmartEnergy itself proposed that unclaimed refunds be disbursed to the Fuel Fund. Although in doing so it did not concede that it actually owed any refunds, *see* ECF No. 30 at 14, the fact that both the concept of such a distribution and the specific recipient came from SmartEnergy weighs heavily against a conclusion that using such a mechanism (whether technically qualifying as "*cy pres*" or not) either converted the refund order into a "penalty" or rendered it grossly disproportional to the gravity of SmartEnergy's regulatory violations.

The Court understands SmartEnergy's criticisms of the PSC's handling of some aspects of the enforcement action. But those criticisms do not make out an Eighth Amendment violation, for the reasons the Court previously explained. And the fact that some of the partial refund checks have gone unclaimed does not convert an otherwise constitutional remedial order into an unconstitutionally excessive fine.[2]

---

[2] Defendants argue that this Court need not reach the merits of this argument because (1) SmartEnergy "could have . . . raised" it "before the Commission," or in the litigation in the Maryland courts, but failed to do so, and (2) in any event SmartEnergy "never took an appeal" from the specific Commission order imposing the $6.5 million refund order. ECF No. 29 at 20–21. Although res judicata clearly precludes SmartEnergy's proposed due process claim, *see* § II, *infra*, it is less clear whether res judicata applies to the Eighth Amendment claim, in part because the Commission did not decide the amount of the total rebate order until after the Maryland Supreme Court's February 2024 decision. *See* ECF No. 30 at 7 n.3. But this Court need not reach the question of whether claim preclusion applies to SmartEnergy's proposed amended Eighth Amendment claim because, regardless, it fails on the merits for the reasons discussed herein.

## II.    SmartEnergy's new "fair notice" claim

The other premise of SmartEnergy's Rule 62.1 motion is that Defendants violated SmartEnergy's due process rights by bringing the enforcement action in the first place. It argues that the enforcement action was premised on "a new interpretation of the statute" that the Commission applied "retroactively, without sufficient notice or warning." ECF No. 30 at 8. SmartEnergy does not contend that any of the state statutes that formed the basis for the Commission's enforcement action were unconstitutionally *vague*. *See id.* at 7 (disclaiming that it wishes to assert a "general void-for-vagueness claim"). Rather, its argument is the following:

> Until its enforcement action against SmartEnergy, the Commission had never before brought an enforcement action against an electricity supplier stemming from inbound calls from customers. (Amend. Compl. ¶ 46.) Moreover, SmartEnergy received the CAD [Consumer Affairs Division] Letters specifically stating that the MTSA does not apply to enrollments following inbound calls from customers[.] (Amend. Compl. ¶¶ 41-44.) The second of these was issued *five days before* the Commission staff filed its enforcement action against SmartEnergy. (Amend. Compl. ¶ 43.) But the Commission is imposing at least $6.5 million—and potentially as much as $15.97 million—in penalties on SmartEnergy for allegedly not abiding by the Commission's novel interpretation of "telephone solicitation" from February 2017 to May 2019, a period long before the Commission announced its new interpretation. This retroactive application of a state agency interpretation, with not only no notice but *contradictory* notice, amply demonstrates a violation of SmartEnergy's Due Process rights.

ECF No. 30 at 9–10.

This argument is barred as a matter of claim preclusion. SmartEnergy asserted essentially this same argument throughout the PSC proceedings and in its challenges of

the PSC proceedings through all levels of the Maryland courts. It framed that argument in statutory rather than constitutional terms, arguing that the pertinent Maryland statutes did not prohibit SmartEnergy's marketing tactics or other conduct. But the Maryland courts rejected that argument at every stage. *In re SmartEnergy Holdings, LLC*, 256 Md. App. 20, 42–50 (2022) (rejecting SmartEnergy's statutory construction argument); *id.* at 50–58 (holding that SmartEnergy in fact violated the MTSA); *In re SmartEnergy Holdings, LLC*, 486 Md. at 550–64 (analyzing the statutory language and concluding that "the MTSA applies to sales made over the telephone where a consumer places a telephone call to a merchant in response to a merchant's marketing materials, unless the transaction falls within one of the statutory exemptions"); *id.* at 564–73 (concluding that the Commission's findings were supported by substantial evidence); *see also id.* at 544 (noting that the Circuit Court for Montgomery County had also entered an order affirming the Commission's decision).

Under the doctrine of res judicata, or claim preclusion, "a prior judgment between the same parties can preclude subsequent litigation on those matters actually and necessarily resolved in the first adjudication." *Orca Yachts, L.L.C. v. Mollicam, Inc.*, 287 F.3d 316, 318 (4th Cir. 2002). "A federal court, as a matter of full faith and credit, under 28 U.S.C. § 1738, must give a state court judgment the same preclusive effect 'as the courts of such State' would give." *In re Heckert*, 272 F.3d 253, 257 (4th Cir. 2001). This means that "a federal court must 'refer to the preclusion law of the State in which the judgment was rendered.'" *Id.* (quoting *Marrese v. Am. Acad. of Orthopaedic Surgeons,* 470 U.S. 373, 380 (1985)).

Under Maryland law, a claim is precluded by a prior judgment "'if there is a final judgment in a previous litigation where the parties, the subject matter and causes of

9

action are identical or substantially identical as to issues actually litigated and as to those which could have or should have been raised in the previous litigation.'" *R & D 2001, LLC v. Rice*, 402 Md. 648, 663 (2008) (quoting *Bd. of Educ. v. Norville*, 390 Md. 93, 106 (2005)). In other words, claim preclusion applies if (1) "the parties in the present litigation are the same or in privity with the parties to the earlier litigation"; (2) the claims presented in the second case are "identical or substantially identical" to those that "could have or should have been raised in the previous litigation"; and (3) "there was a final judgment on the merits in the prior litigation." *Id*. The doctrine "'avoids the expense and vexation attending multiple lawsuits, conserves the judicial resources, and fosters reliance on judicial action by minimizing the possibilities of inconsistent judgments.'" *Davis v. Wicomico Cnty. Bureau*, 447 Md. 302, 307 (2016) (quoting *Cochran v. Griffith Energy Servs., Inc.*, 426 Md. 134, 140 (2012)).

Here, there is no dispute that the parties in the state court litigation are the same parties as in this case, and that the state court litigation resulted in a final judgment. The dispute related to claim preclusion turns on the second element, which requires "identical or substantially identical" claims. On that element, "Maryland courts have adopted the 'transactional' approach articulated in § 24 of the Restatement (Second) of Judgments." *ACAS, LLC v. Charter Oak Fire Ins. Co.*, 626 F. Supp. 3d 866, 876 (D. Md. 2022) (citing *Colandrea v. Wilde Lake Cmty. Ass'n, Inc.*, 361 Md. 371, 389 (2000)). Under this approach, "[w]hat constitutes a transaction or series of connected transactions is 'determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties'

10

expectations or business understanding or usage.'" *Id.* (quoting *Kent Cnty. Bd. of Educ. v. Bilbrough*, 309 Md. 487, 498 (1987)).

A "claim" is "coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; regardless of the number of primary rights that may have been invaded; and regardless of the variations in the evidence needed to support the theories or rights." *Bilbrough*, 309 Md. at 497–98 (quoting Restatement (Second) of Judgments § 24 cmt. a (1982)). The consequence of this rule against "splitting" claims is that "[w]hen a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see [Restatement] §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Id.* at 498 (quoting Restatement (Second) of Judgments § 24); *see also Hall v. St. Mary's Seminary & Univ.*, 608 F. Supp. 2d 679, 686 (D. Md. 2009), *aff'd*, 378 F. App'x 326 (4th Cir. 2010) ("Two suits that rely upon the same facts will share an identity of claims even if the suits are based upon different legal theories.") (applying Maryland law).

Here, the "transaction" that SmartEnergy litigated in the state courts, through its action seeking judicial review of the PSC's liability order and at least some aspects of its remedies order, is the same "transaction" that is the subject of SmartEnergy's federal case, namely the validity and propriety of the PSC's enforcement action arising from SmartEnergy's marketing efforts between February 2017 and March 2019. *See* ECF No. 21 at 5–17 (describing the underlying claims and procedural history). The focus of the "transaction" test is on the facts, not the legal theories that are asserted. *See, e.g.*,

11

*Bilbrough*, 309 Md. at 500–04; Restatement (Second) of Judgments § 24(2). Here, the facts pertinent to the new due process claim SmartEnergy desires to assert were litigated in the state courts. (As noted above, the Eighth Amendment claim is a bit different, which is why this Court does not rely on claim preclusion with respect to that claim. *See* n.2, *supra*.) SmartEnergy thoroughly litigated the question of whether its conduct was prohibited by the MTSA, and the Maryland courts, including the Supreme Court of Maryland, held that it was, and that the factual findings on which the enforcement orders were entered were supported by substantial evidence and were not clearly erroneous. Having litigated that claim to a final judgment, SmartEnergy is precluded from reclothing those same arguments in constitutional garb and having the federal courts adjudicate whether its conduct was prohibited by the MTSA with sufficient clarity to have justified the PSC's enforcement action. "[I]f the two claims or theories are based upon the same set of facts and one would expect them to be tried together ordinarily, then a party must bring them simultaneously." *Anne Arundel Cnty. Bd. of Educ. v. Norville*, 390 Md. 93, 109 (2005). "Legal theories may not be divided and presented in piecemeal fashion in order to advance them in separate actions." *Id.*

      The precise question presented by the due process component of SmartEnergy's Rule 62.1 motion is this: If the Court of Appeals were to remand this case, would this Court grant SmartEnergy leave to file an amended complaint to assert a new cause of action under the due process clause of the Fourteenth Amendment? *See* ECF No. 26-1 at 3–4 & 7–8 (motion); ECF No. 26-2 at 36–38 (proposed due process cause of action); ECF No. 26-3 at 38–41 (same, in redlined version of proposed amended complaint); ECF No. 30 at 7–10 (SmartEnergy's reply brief, fleshing out its proposed due process theory). The answer is no, because that proposed claim would be subject to claim

preclusion, for the reasons explained above. And based on that conclusion, this Court need not decide whether the due process claim would alternatively be subject to dismissal based on collateral estoppel, *see* ECF No. 29 at 19–21 & n.12, or based on the *Rooker-Feldman* doctrine, *see id.* at 16–19.

## CONCLUSION

For the foregoing reasons, the Court concludes that the developments regarding the distribution of the refunds that the PSC ordered SmartEnergy to pay do not alter the Court's conclusion that SmartEnergy has not stated an Eighth Amendment excessive finds claim on which relief could be granted, and SmartEnergy also has not identified a due process claim on which relief could be granted.

Date:  February 6, 2026

*/s/*
Adam B. Abelson
United States District Judge